1 | Mark B. Frazier (State Bar No. 107221)
mfrazier@rutan.com
2 | Corey H. Collins (State Bar No. 318646) (*admission in the Northern District pending*)
3 | ccollins@rutan.com
RUTAN & TUCKER, LLP
4 | 611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
5 | Telephone:  714-641-5100
Facsimile:    714-546-9035
6 |
Attorneys for Plaintiff
7 | YEUNG BING KWONG KENNETH

8 |                    UNITED STATES DISTRICT COURT

9 |                    NORTHERN DISTRICT OF CALIFORNIA

10 |

| | |
|---|---|
| YEUNG BING KWONG KENNETH, an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **DERIVATIVE CLAIMS:** |
| YEUNG CHI SHING HOLDING (DELAWARE) INC., a Delaware Corporation; YEUNG PING LEUNG HOWARD, and individual; YEUNG LUK PUI LAN AGNES, and individual; FUNG CHUNG YEE CAROLINE, an individual; CHEUNG KIT MAN MELINA, an individual; MT. OSCAR LIMITED, a Hong Kong entity; and DOES 1 through 100, inclusive, | **(1)  18 U.S.C. § 1962(c) (CIVIL RICO);** **(2)  18 U.S.C. § 1962(d) (CIVIL RICO CONSPIRACY);** **(3)  BREACH OF THE DUTY OF LOYALTY;** **(4)  BREACH OF THE DUTY OF GOOD FAITH;** **(5)  BREACH OF THE DUTY OF CARE;** **(6)  DECLARATORY JUDGMENT – THE "ADVISOR FEES" WERE ILLEGALLY PAID IN VIOLATION OF FEDERAL AND STATE LAW.** |
| Defendants. | **INDIVIDUAL CLAIMS:** |
| | **(7)  8 DEL. CODE, § 225 (ATTEMPTED WRONGFUL REMOVAL AS DIRECTOR);** **(8)  DECLARATORY JUDGMENT - KENNETH IS NOT LIABLE FOR DIRECTOR DEFENDANTS' ACTIONS.** |
| | **[JURY TRIAL DEMANDED]** |

1  Plaintiff Yeung Bing Kwong Kenneth ("Kenneth") alleges as follows for his

2  Complaint derivatively on behalf of nominal defendant Yeung Chi Sing Holding

3  (Delaware) Inc. ("Holding Company"), and against defendants Yeung Ping Leung

4  Howard ("Howard"); Yeung Luk Pui Lan Agnes ("Agnes"); Fung Chung Yee

5  Caroline ("Fung"); Cheung Kit Man Melina ("Cheung");  and Mount Oscar Limited

6  ("Mt. Oscar") (collectively, "Defendants")[1]:

7                                      **INTRODUCTION**

8  1.  This Complaint concerns an earnings stripping and tax evasion scheme

9  initiated in 2015 and orchestrated by some – but not all – members of a foreign-

10  based family and their advisors, through the use of multiple levels of wholly-owned

11  or controlled foreign and domestic entities, and facilitated (unwittingly) by a major

12  U.S.-based international law firm (the "Earnings Stripping Scheme").  The Earnings

13  Stripping Scheme involves the payment of "advisor fees" (the "Advisor Fees") by a

14  U.S.-based company (Holding Company) to a related Hong Kong company (Mt.

15  Oscar), purportedly in exchange for "advisor services" for the management of U.S.

16  real estate holdings (the "Advisor Services") that were never actually provided, or

17  were not of reasonably equivalent value to the Advisor Fees that were paid.

18  Defendants caused Holding Company to pay these Advisor Fees in order (1) to

19  evade paying required United States federal and state taxes; and (2) to allow certain

20  members of the foreign-based family to receive a much greater percentage of

21  corporate funds than they normally would receive based upon their percentage

22  shareholder interests in Holding Company's ultimate Hong Kong parent company,

23  Yeung Chi Shing Estates, Ltd ("Estates").

24  2.  Plaintiff Kenneth brings this lawsuit derivatively on behalf of the U.S.-

25  based Holding Company through which this Earnings Stripping Scheme was and

26  continues to be perpetrated by Holding Company's directors and their advisors, and

27  _____

28  [1]  Kenneth, Howard, and Agnes are referred to by their first names in this
   Complaint to avoid confusion.  No disrespect is intended through the use of
   Kenneth, Howard, and Agnes' first names.

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-2-

Case No. _____
COMPLAINT

1  Mt. Oscar, to recover damages for the harm Holding Company has suffered, and for

2  the appointment of one or more independent directors to protect Holding Company

3  from future mismanagement.  Kenneth also brings this lawsuit on his own behalf to

4  redress wrongful efforts to remove him as a director of Holding Company, and to

5  obtain the Court's determination that he is not responsible for the wrongful actions

6  of the individually-named Defendants.

7       3.  Holding Company is a Delaware Chapter C corporation subject to

8  taxation at the corporate level and is owned by a single shareholder subject to

9  taxation at the shareholder level.  Holding Company is a subsidiary of Estates, a

10  Hong Kong limited company that owns and controls income-generating real estate

11  property in the United States (and throughout the world) through a vast network of

12  subsidiaries, including Holding Company.  Estates is owned by Plaintiff Kenneth

13  (through companies owned by Kenneth), Kenneth's siblings (including Defendant

14  Howard), certain private charitable foundations, and other individuals.  The

15  respective ownership interests in Estates are depicted in Exhibit 1 attached to this

16  Complaint.

17       4.  Holding Company is Estates' highest level U.S. subsidiary.  Holding

18  Company serves as the parent company to numerous other U.S. subsidiary entities

19  that own all of Estates' income-producing U.S. real estate assets, which are mainly

20  located in California and New York.  These U.S. real estate assets are worth

21  hundreds of millions, if not billions, of dollars. Estate's relationships to Holding

22  Company and Estate's other subsidiaries are depicted in Exhibit 2 attached to this

23  Complaint.

24       5.  To reduce Holding Company's U.S. taxable income, current members

25  of Holding Company's board of directors – Defendants Howard, Fung, Agnes, and

26  Cheung (collectively, the "Director Defendants") – concocted, conspired to

27  participate in and actually enacted the Earnings Stripping Scheme, through which

28  Holding Company claimed deductions for Advisor Fees paid to Estate's related

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-3-
Case No. _____
COMPLAINT

1   Hong Kong subsidiary known as Mount Oscar in exchange for certain Advisor

2   Services that Mt. Oscar purportedly provided to Holding Company concerning U.S.

3   real estate.  Holding Company's income was paid out pre-tax as Advisor Fees in the

4   manner described in this Complaint, as demonstrated in Mt. Oscar's Financial

5   Statements which are attached as Exhibit 3 to this Complaint.  The income used to

6   pay the Advisor Fees was derived from U.S. real estate, and payments were made

7   from the U.S. internationally through the use of wires and the U.S. mail to foreign

8   locations such as Hong Kong.

9       6.      During the relevant timeframe, Kenneth was a director of Holding

10   Company and Mt. Oscar and is unaware of Mt. Oscar or anyone on Mt. Oscar's

11   behalf ever performing any Advisor Services for the benefit of Holding Company.

12   Kenneth did, however, receive large payments purporting to be for Advisor

13   Services.  But Kenneth was never asked to perform Advisor Services in exchange

14   for the payments he received and never performed any such Advisor Services.

15   Kenneth is unaware of Mt. Oscar, or any recipient of Advisor Fees payments, *ever*

16   providing actual Advisor Services to Holding Company.  Yet, almost

17   US$14,000,000 in Advisor Fees were paid by Holding Company directly to the

18   board members of Mt. Oscar (and certain other individuals) for these supposed

19   Advisor Services.  Kenneth is informed and believes that Holding Company

20   intended to deduct and has deducted these Advisor Fees in its federal and state tax

21   returns to reduce its taxable U.S. income.

22       7.      Kenneth, as a board member of Estates, Holding Company, and Mt.

23   Oscar, came to have severe misgivings about the legality and propriety of the

24   Advisor Fees that Holding Company was paying to Mt. Oscar.  Consistent with his

25   fiduciary duties as a director of Estates, Holding Company, and Mt. Oscar, Kenneth

26   investigated the Advisor Fees in an attempt to determine whether or not Mt. Oscar

27   or the Director Defendants were actually providing any Advisor Services to Holding

28   Company in exchange for the Advisor Fees.

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18                    -4-
Case No. _____
COMPLAINT

8.      In retaliation for Kenneth's investigation, the Director Defendants have attempted to improperly remove Kenneth as a director of Estates and Mt. Oscar. Unbeknownst to Kenneth, Director Defendants also have attempted to remove Kenneth as a director of Holding Company by a vote of the Director Defendants, in direct violation of 8 Delaware Code, § 225, which requires that a director be removed by a vote of the shareholder(s).

9.      As a shareholder of Estates, Kenneth has the right to derivatively assert Holding Company's (a subsidiary of Estates) rights in this action against Director Defendants Howard, Fung, Agnes, and Cheung to protect Holding Company's rights relative to the Earnings Stripping Scheme.  Kenneth therefore derivatively asserts claims on behalf of Holding Company for (1) Civil RICO pursuant to 18 U.S.C. § 1962(c); (2) Civil RICO conspiracy pursuant to 18 U.S.C. § 1962(d); (3) breach of the duty of loyalty; (4) breach of the duty of good faith; (5) breach of the duty of care; and (6) declaratory relief against the Director Defendants.

10.     Kenneth also individually asserts claims for (7) attempted wrongful removal of Kenneth as a director of Holding Company; and (8) declaratory relief against Holding Company itself and the Director Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under 18 U.S.C. § 1961 et. seq, the Racketeering Influenced and Corrupt Organizations Act ("RICO").  This Court has supplemental jurisdiction over Kenneth's state law claims – asserted derivatively on behalf of Holding Company and individually on his own behalf – under 28 U.S.C. § 1367(a) and 28 U.S.C. § 2201.

12.     Venue is proper in this Court pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because the only defendant that is a citizen of the United States in this action – Holding Company – has its principal place of business in San Francisco and is therefore a resident of California and subject to personal jurisdiction in this

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-5-
Case No. _____
COMPLAINT

1 | state.

2 | **THE PARTIES**

3 |     13.    Plaintiff Kenneth is a citizen of both Canada and Hong Kong, presently
4 | residing in Hong Kong.  Kenneth was and is a shareholder – and is a former director
5 | – of Estates.

6 |     14.    Estates owns and controls Holding Company, as follows:

7 |     ➢ Estates owns 65.70% of Oro Holdings Ltd., a British Virgin Islands
8 |         entity ("Oro BVI").

9 |     ➢ Oro BVI, in turn wholly owns Oro Holdings Inc., a Barbados entity
10 |         ("Oro Barbados").

11 |     ➢ Oro Barbados, in turn, wholly owns Holding Company.
12 | A more detailed diagram of the corporate structure of Estates and its subsidiaries is
13 | also attached hereto as Exhibit 2.

14 |     15.    Plaintiff Kenneth was also a director of Holding Company (and a
15 | number of other Estates' subsidiaries) until sometime in 2017, when it appears from
16 | Holding Company's Delaware franchise tax reports that he was improperly removed
17 | as a director without any notice.

18 |     16.    Nominal Defendant Holding Company is a Delaware corporation that
19 | has its principal place of business in San Francisco, California.  Holding Company
20 | was formed by Kenneth's late father Yeung Chi Wan ("Chi Wan") in 1981 to invest
21 | in U.S. real estate.  Holding Company serves as the parent corporation to a large
22 | number of entities that hold U.S. real estate, approximately two-thirds of which are
23 | organized under California law and have their principal place of business in
24 | California, as indicated in Exhibit 2.

25 |     17.    Upon information and belief, Defendant Howard is a citizen of The
26 | United Kingdom and Hong Kong.  At all relevant times, Howard served and
27 | currently serves as a director of Holding Company.  Howard undertook the acts
28 | alleged herein with the intent and knowledge that his acts were directed at the U.S.

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-6-

Case No. _____

COMPLAINT

1   and would have effects in the U.S.  Howard's acts include, but are not limited to,

2   directing and participating in the management of Holding Company's U.S.

3   operations, concealing from or misrepresenting information to a U.S. law firm to

4   obtain its assistance in connection with the Earnings Stripping Scheme, initiating

5   and implementing the Earnings Stripping Scheme in the U.S., defrauding the U.S.

6   Government of tax revenue, payment of improper Advisor Fees derived from U.S.

7   real estate to himself and to others, and attempting to improperly remove Plaintiff

8   Kenneth from Holding Company's board of directors in order to continue with the

9   Earnings Stripping Scheme.  Upon information and belief, Howard also currently

10  serves as the director of numerous Holding Company subsidiaries, including Cohen

11  Investment (Delaware), Inc.; Edenville Properties (Delaware), Inc.; RP 73, Inc.;

12  YCS Investments; S.C. Forty Acres, Inc.; Young Chi Shing, Inc.; Youngsville

13  Development, Inc.; YCS Golf Properties, Inc.; Youngsville Holdings, Inc.; Pine

14  Grant Investment Co. Ltd; Edenvale Holdings, Inc.; YCS NEVADA

15  INCORPORATED; and Hayward 1900, Inc., all of which are United States-based

16  subsidiaries of Holding Company with their principal place of business at 170

17  Maiden Lane, San Francisco, California.  Defendant Howard does stay or has

18  authorization to stay at real properties owned by Holding Company or its

19  subsidiaries in California.

20      18.     Upon information and belief, Defendant Fung is a citizen of Canada

21  and Hong Kong.  At all relevant times, Fung served and currently serves as a

22  director of Holding Company.  Fung undertook the acts alleged herein with the

23  intent and knowledge that her acts were directed at the U.S. and would have effects

24  in the U.S.  Fung's acts include, but are not limited to, directing and participating in

25  the management of Holding Company's U.S. operations, concealing from or

26  misrepresenting information to a U.S. law firm to obtain its assistance in connection

27  with the Earnings Stripping Scheme, initiating and implementing the Earnings

28  Stripping Scheme in the U.S., defrauding the U.S. Government of tax revenue, and

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-7-

Case No. _____
COMPLAINT

1 | payment of improper Advisor Fees derived from U.S. real estate to herself and to
2 | others.

3 |      19.    Upon information and belief, Defendant Agnes is a citizen of The
4 | United States of America and Hong Kong.  Agnes is the widow of Yeung Bing Kin
5 | Alan ("Alan"), one of Kenneth's deceased brothers.  At all relevant times, Agnes
6 | served and currently serves as a director of Holding Company.  Agnes undertook the
7 | acts alleged herein with the intent and knowledge that her acts were directed at the
8 | U.S. and would have effects in the U.S.  Agnes' acts include, but are not limited to,
9 | directing and participating in the management of Holding Company's U.S.
10 | operations, concealing from or misrepresenting information to a U.S. law firm to
11 | obtain its assistance in connection with the Earnings Stripping Scheme, initiating
12 | and implementing the Earnings Stripping Scheme in the U.S., defrauding the U.S.
13 | Government of tax revenue, payment of improper Advisor Fees derived from U.S.
14 | real estate to herself and to others, and attempting to improperly remove Plaintiff
15 | Kenneth from Holding Company's board of directors in order to continue with the
16 | Earnings Stripping Scheme.

17 |      20.    Upon information and belief, Defendant Cheung is a citizen of Hong
18 | Kong.  At all relevant times, Cheung served and currently serves as a director of
19 | Holding Company.  Cheung undertook the acts alleged herein with the intent and
20 | knowledge that her acts were directed at the U.S. and would have effects in the U.S.
21 | Cheung's acts include, but are not limited to, directing and participating in the
22 | management of Holding Company's U.S. operations, concealing from or
23 | misrepresenting information to a U.S. law firm to obtain its assistance in connection
24 | with the Earnings Stripping Scheme, initiating and implementing the Earnings
25 | Stripping Scheme in the U.S., defrauding the U.S. Government of tax revenue,
26 | payment of improper Advisor Fees derived from U.S. real estate to herself and to
27 | others, and attempting to improperly remove Plaintiff Kenneth from Holding
28 | Company's board of directors in order to continue with the Earnings Stripping

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-8-

Case No. _____
COMPLAINT

1  Scheme.

2      21.    Mt. Oscar is a citizen of Hong Kong. Mt. Oscar undertook the acts
3  alleged herein with the intent and knowledge that its acts were directed at the U.S.
4  and would have effects in the U.S.  Mt. Oscar's acts include, but are not limited to,
5  facilitating the Earnings Stripping Scheme, defrauding the U.S. Government of tax
6  revenues, receipt of improper Advisor Fees and/or facilitating payment of such
7  Advisor Fees to the Director Defendants, and conspiring with and aiding and
8  abetting the other Defendants to initiate and perpetuate the Earnings Stripping
9  Scheme.

10                        **GENERAL ALLEGATIONS**

11      22.    Kenneth is one of seven (7) children (five sons and two daughters) of
12  the late Chi Wan and Kwok Yan Chee ("Yan Chee").

13      23.    In 1962, Kenneth's father Chi Wan formed Estates, a Hong Kong
14  limited company.  Since 1962, the Yeung family has used Estates as a holding
15  company for their investments in a variety of worldwide assets held in subsidiary
16  entities.  A significant portion of Estates' assets consist of United States real estate,
17  almost exclusively located in California and New York.

18      24.    In order for Estates to own and control the U.S. real estate investments,
19  Chi Wan formed Holding Company in 1981.  Holding Company is the parent
20  company of a vast network of U.S.-based subsidiaries that own U.S. real estate
21  assets.  Estates' control of this network of subsidiaries, through and including
22  Holding Company, is reflected in Exhibit 2.  On information and belief, Estates'
23  U.S. real estate assets have a value of approximately US$1,000,0000,000.

24      25.    Yeung family members – including Kenneth – have controlled Estates,
25  and hence all its subsidiaries, by serving as directors of Estates and other Estates
26  subsidiaries (including Holding Company and Mt. Oscar) throughout Estates'
27  existence.

28  / / /

26.     Moreover, certain family members – including Kenneth – also own and exert control over Estates and its subsidiaries as shareholders of Estates. The current shareholders of Estates include Kenneth (through corporate nominees), his younger brother Howard (through corporate nominees), the estate of Kenneth's late brothers (through personal representatives or corporate nominees), and several family or trust foundation companies. Some of these shareholders are charity organizations that Kenneth's father Chi Wan hoped to support through the success of Estates' business (the "Charity Shareholders"). A chart identifying the various shareholders of Estates is attached hereto as Exhibit 1.

27.     Sometime prior to 2015, Estates acquired a 99.5% controlling interest in the Hong Kong company Mt. Oscar. Upon information and belief, Mt. Oscar was a "shelf company" at the time it was acquired, meaning that it was created years earlier but conducted no business activity until it was acquired by Estates. These years of existence create the facade of legitimacy for the corporation, and a facade of legitimacy for whatever purposes its later owners chose. Tellingly, even after Mt. Oscar was activated by Estates and made a part of the Earnings Stripping Scheme alleged below, Mt. Oscar has never held any Yeung family assets or engaged in any trade or business.

28.     At the time Estates acquired Mt. Oscar, Kenneth was already a director of both Estates and Holding Company. After Estates acquired Mt. Oscar, Kenneth was also made a director of Mt. Oscar.

29.     In 2015, without Kenneth's knowledge or involvement, the Director Defendants, certain other Yeung family members, and their advisors developed the Earning Stripping Scheme and used Mt. Oscar to give the Earning Stripping Scheme a facade of legitimacy. Kenneth is informed and believes that the other Director Defendants, and certain other Yeung family members are complicit in and aid and abet the Earning Stripping Scheme.

/ / /

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-10-

Case No. _____
COMPLAINT

30. The Earnings Stripping Scheme these individuals conspired to enact involves Holding Company paying certain Advisor Fees to Mt. Oscar to (1) decrease Holding Company's U.S. tax liability from the operations of Holding Company's U.S. subsidiaries; and (2) increase cash payments from the U.S. real estate assets held in Holding Company's U.S. subsidiaries to certain Yeung family members by (a) causing Holding Company to pay yearly multi-million dollar Advisor Fees to Mt. Oscar, which in turn would remit the Advisor Fees proceeds to Yeung family members; and (b) causing Holding Company to claim tax deductions for such payment as business expenses. Additionally, payment of these so-called Advisor Fees payments pre-tax would allow certain Yeung family members to "double dip." The Advisor Fee payments would make more of Holding Company's earnings available for payment to certain Yeung family members than otherwise required by their respective ownership percentages in Estates by creating a "pre-tax earnings" payment to these certain Yeung family members, thereby reducing the "post-tax" earnings to be distributed to all shareholders of Estates, especially the Charity Shareholders.

31. Under the Earnings Stripping Scheme, as implemented, neither Mt. Oscar nor anyone on its behalf would actually render any Advisor Services to Holding Company or its subsidiaries. Rather, Mt. Oscar would only appear (in its books and records) to render such services in exchange for payment from Holding Company. Thus, the Advisor Fees payments would accomplish the dual goals of (1) appearing to increase expenses, which would lower Holding Company's U.S. and state tax liability; and (2) increasing cash payments from Holding Company's assets to certain Yeung family members.

32. To give the Earnings Stripping Scheme an additional appearance of legitimacy, one or more of the Defendant Directors and persons acting on their behalf – including Defendant Fung – caused 677 Fifth Avenue Corporation ("677 Corp."), one of Holding Company's many U.S.-based subsidiaries, to retain the

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-11-
Case No. _____
COMPLAINT

services of U.S.-based attorneys at a global law firm to advise on the "appropriate" arms-length compensation (i.e., the Advisor Fees) to be paid to Mt. Oscar in exchange for the Advisor Services.

33.    Upon information and belief, Defendant Fung serves Estates as a U.K. certified accountant and a consultant.  However, Defendant Fung has admitted that she has never actually been qualified as a U.K. certified accountant.  Still, she has received payment for her purported accounting and consulting services from Holding Company.

34.    Holding Company's subsidiary 677 Corp., through Defendant Fung, provided the U.S.-based attorneys of the global law firm with a list of activities Mt. Oscar was purportedly planning to perform in consideration for Holding Company's payment of the Advisor Fees.  Defendant Fung also provided the attorneys with the total value of assets under Holding Company's management.

35.    On November 10, 2015, the U.S.-based attorneys of the global law firm issued a memorandum analyzing and evaluating the appropriateness of the Advisor Fees the law firm was told would be paid by Holding Company to Mt. Oscar for Advisor Services (the "Memorandum").

36.    At that time, the directors of Mt. Oscar were Plaintiff Kenneth, Defendant Howard, and their late brother Alan.  Defendant Fung was the financial consultant to Mt. Oscar, and KM Cheung was the company's secretary.  On or about March 3, 2016, the Mt. Oscar directors were presented with an advisory services agreement, pursuant to which Mt. Oscar would agree to render Advisory Services to Holding Company in exchange for payment of Advisor Fees (the "Advisor Agreement").  Alan and Defendant Howard presented the conclusions reached by the global law firm in its Memorandum, but the Memorandum was not provided to Kenneth for his review.  Alan and Defendant Howard urged approval of the Advisor Agreement.  At the time, Kenneth knew that Alan was heavily involved in the Yeung family's U.S. real estate business, and believed that Alan was knowledgeable

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-12-
Case No. _____
COMPLAINT

1   about real estate investments and was an ethical businessman.

2        37.   Based on the information provided to him concerning the

3   Memorandum, Alan's reputation, Defendant Howard's support, and statements

4   made by other Yeung family members, Kenneth believed that Mt. Oscar would, in

5   fact, render Advisor Services to Holding Company in exchange for reasonable

6   Advisor Fees.  On March 3, 2016, the Mt. Oscar directors adopted resolutions

7   approving the Advisor Agreement.  This approval was made effective retroactively

8   to April 1, 2015, the date on which Mt. Oscar supposedly began providing Advisor

9   Services to Holding Company.

10       38.   Between January 1, 2015 and March 31, 2017, Holding Company paid

11   HK$113,694,467 to Mt. Oscar in pre-tax Advisor Fees.  This total translates into

12   roughly $14,765,515 in U.S. dollars.[2]

13       39.   Based upon the amounts received by Kenneth, he is informed that

14   Defendants Howard Yeung, Defendant Agnes Yeung, and Yeung Ho Wai Bing

15   received Advisor Fees in the same amounts as Kenneth, and that Kenneth's sisters

16   Yeung Bick Yee, Amy and Yeung Eng Yee, Janet each received as a consultancy

17   fee half of the amount received by Kenneth.

18       40.   Financial statements from Mt. Oscar indicate that the bulk of the

19   payments for the supposed Advisor Services that Holding Company paid to Mt.

20   Oscar were split between a purported "Consultancy Fee" and "Director's

21   Remuneration."

22       41.   The "Director's Remuneration" amounts were paid to the directors of

23   Mt. Oscar, which included Kenneth, Alan, and Defendant Howard, and after Alan's

24   death, Defendant Agnes (Alan's widow).  The "Consultancy Fees" were paid to

25   other Yeung family members that were not directors of Mt. Oscar .  Both the

26   Director's Remuneration and Consultancy Fees were paid in consideration for

27   _____

28   [2]   To calculate this total, an exchange rate of 7.77 HK$-1 US$ was applied.  This rate was the approximate exchange rate between January 1, 2015 and March 31, 2017.

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18                              -13-

Case No. _____
COMPLAINT

1   Advisor Services purportedly rendered pursuant to the Advisor Agreement.

2       42.    Although Kenneth received significant "Director's Remuneration"

3   payments, he never rendered any Advisor Services to Holding Company or Mt.

4   Oscar.  Moreover, on information and belief, the Director Defendants and Yeung Ho

5   Wai Bing, a director of Mount Oscar, and non-director family members, Yeung

6   Bick Yee, Amy and Yeung Eng Yee, Janet received Advisor Fees payments, but did

7   not render any Advisor Services to Holding Company or Mt. Oscar.

8       43.    Although the Advisor Agreement provides that Advisor Fees will be

9   paid to Mr. Oscar, this did not occur.  Instead, the Advisor Fees were paid (as

10   "Director's Remuneration" and "Consultancy Fees") directly from Holding

11   Company's bank account in the U.S. by wire transfer or U.S. mail to Kenneth, the

12   Director Defendants, other Yeung family members, and the Director Defendants'

13   advisors.  On information and belief, Mt. Oscar never had its own bank account in

14   which Holding Company could deposit the Advisor Fees Mt. Oscar was purportedly

15   due or from which to make the payments that were received by Kenneth, the

16   Director Defendants, other Yeung family members, and the Director Defendants'

17   advisors.

18       44.    Upon information and belief, Holding Company claimed deductions for

19   the full amount of the Advisor Fees payments on its U.S. federal and state income

20   tax returns.  Upon information and belief, Defendant Howard signed the federal and

21   state tax returns on behalf of Holding Company.

22       45.    Although Kenneth voted for the resolution approving the Advisor

23   Agreement, he had concerns regarding whether the Advisor Fees payments might be

24   improper, and whether his receipt of Advisor Fees might be a breach of his fiduciary

25   duties as a director of Holding Company.  After his brother Alan's death in

26   September 2016, Kenneth began making inquiries regarding the propriety and

27   legality of the Advisor Fees.

28   / / /

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-14-
Case No. _____
COMPLAINT

46.     Kenneth became suspicious that the U.S.-based attorneys of the global law firm which provided the Memorandum may not have been provided full and accurate information for a proper analysis of the Advisor Fees issue.  By letter dated July 21, 2017, Kenneth requested an explanation of the instructions and information regarding Mt. Oscar's activities that Defendant Fung had provided to the U.S.-based attorneys of the global law firm that drafted the Memorandum.  In letters dated September 13 and 18, 2017, Kenneth questioned Defendants Fung and Howard about the same subject after he did not receive a response to his July 21, 2017 letter.

47.     On September 25, 2017, Defendant Fung finally responded to Kenneth's inquiries by letter.  However – despite the fact that the law firm's Memorandum was addressed to her – Fung claimed ignorance and stated that she had had no legal authority or knowledge to instruct the law firm in its analysis of the Advisor Fees.

48.     In October 2017, by letter to the directors of Holding Company, Kenneth raised his concerns regarding the propriety of the Advisor Fees payments and other purported expenses that Holding Company was incurring and had purportedly paid for Advisor Services.

49.     After Kenneth raised these concerns, interactions among Kenneth and Defendants Howard and Fung, as well as Dennis Wong, an advisor to the Yeung family businesses ("Mr. Wong"), became tense.  In response to Kenneth's concerns, Defendants Howard and Fung, and Mr. Wong, requested that the U.S.-based attorneys of the global law firm who had previously issued the Memorandum provide an update to the Memorandum based on a revised list of Advisor Services purportedly being performed on Holding Company's behalf.

50.     However, none of the purported Advisor Services on the revised list were ever performed by Kenneth.  Upon information and belief, none of the purported Advisor Services on the revised list were ever performed by Mt. Oscar or by any other person who has received compensation from Holding Company

1 through the Advisor Fees payments alleged above.

2      51.     Kenneth has not received any information indicating that the U.S.-

3 based attorneys of the global law firm were informed of Kenneth's concerns that the

4 Advisor Services were not being performed. Upon information and belief, the U.S.-

5 based attorneys of the global law firm were unaware of the issues involving the

6 Advisor Fees, and concluded that the law firm's initial findings in the

7 Memorandum regarding the appropriateness of the Advisor Fees payments were

8 unchanged.

9      52.     Kenneth continued pressing Defendants Howard, Fung, and the other

10 Yeung family members for information relating to whether *anyone* had *ever*

11 provided any Advisor Services to Holding Company through Mt. Oscar.

12      53.     In response, Kenneth was not re-elected as a member of Estates' board

13 of directors at Estate's annual general meeting in December 2017. Additionally, on

14 January 27, 2018 a Notice of Directors' Meeting (the "Notice") for Mt. Oscar was

15 sent to the Mt. Oscar directors, including Kenneth. The Notice scheduled a

16 director's meeting for January 31, 2018 in Hong Kong and included an agenda item

17 to remove Kenneth as a director of Mt. Oscar. Kenneth is informed and believes

18 Defendant Howard attended this meeting by phone from a location in the United

19 States.

20      54.     On January 31, 2018, Kenneth wrote a letter to the directors of Mt.

21 Oscar in which he outlined and detailed his serious concerns about the

22 appropriateness and general legality of the Advisor Fees payments made by Holding

23 Company to Mt. Oscar, given Kenneth's belief that neither Mt. Oscar nor any

24 person actually provided any Advisor Services to Holding Company. He also

25 reiterated that his inquiry into the Advisor Fees payments was done pursuant to his

26 duty as a director of Mount Oscar for the best interest of Estates and its

27 shareholders, including the Charity Shareholders.

28 / / /

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18                                    -16-

Case No. _____

COMPLAINT

55.    Mt. Oscar's directors did not refute or rebut Kenneth's statements, and did not provide any information to show whether Advisor Services had in fact been performed.

56.    In retaliation for Kenneth raising important questions regarding the propriety and legality of the Advisor Fees, Defendant Directors attempted to remove Kenneth as a director of Mt. Oscar on March 9, 2018 at an Extraordinary General Meeting of the Board of Directors of Mt. Oscar.

57.    Kenneth is informed and believes that Hong Kong law requires that a director of a Hong Kong company such as Mr. Oscar in Kenneth's position must receive a written statement explaining the grounds underlying a removal resolution. Kenneth never received such a written statement.  Therefore, the Defendant Director's attempted removal of Kenneth as a director of Mt. Oscar was unlawful.

58.    Because this attempted removal was unlawful, Kenneth filed a lawsuit in Hong Kong seeking redress for his removal from the Mt. Oscar board.  Kenneth also filed a lawsuit in Hong Kong regarding his removal as a director of Estates.

59.    After filing these lawsuits in Hong Kong, Kenneth discovered, through review of Holding Company's Delaware state franchise tax reports, that Holding Company reported that Kenneth had been removed as a director of Holding Company at some point in 2017, after he began making inquiries regarding the Advisor Fees.  Kenneth did not receive any notice of any meeting or other action to remove him as a Holding Company director; rather, he discovered the attempted removal as part of his own investigation.  Upon information and belief, Kenneth's purported removal was in violation of the director removal procedures required by applicable Delaware law.

60.    Through further review of additional public filings, Kenneth discovered that in 2017 he had also been removed as director of several other Yeung family U.S. corporations in 2017 without notice.

/ / /

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-17-

Case No. _____
COMPLAINT

61.     Between the date of the Mt. Oscar directors' approval of the Advisor Agreement (March 2016) and the date that Kenneth was improperly removed from the Mt. Oscar board (March 2018), Kenneth received approximately $3.7 million in "Directors' Remuneration" payments for Advisor Services that Mt. Oscar and Kenneth never actually provided to Holding Company.  These payments were made directly from Holding Company to Kenneth's personal bank account in Hong Kong. Because of Kenneth's concern regarding the legality of these payments and their effect on Holding Company, he has deposited all funds he has received for "Directors' Remuneration" payments in a separate bank account.  Upon a judicial finding that these payments were unlawful, Kenneth will promptly return all "Directors' Remuneration" funds to the appropriate recipient.

62.     Defendants' most recent effort to create a facade of legitimacy for the Earnings Stripping Scheme is an October 15, 2018 document from Mt. Oscar's Certified Public Accounts entitled "Representations Regarding Directors Emoluments, Loans and Other Transactions."  This document confirms the essence of the payment of Advisor Fees for Advisory Services under the Earnings Stripping Scheme by referencing a payment to Kenneth of US $1,315,616.44 in consideration for "Management and advisory services income charged in accordance to the Management and Advisory Services Agreement," As alleged above, Kenneth did not and never has provided Advisory Services to Holding Company.

63.     Upon information and belief, the approximately US$15 million Holding Company paid to Mt. Oscar in Advisor Fees from 2015-2017 would have otherwise been subject to taxation pursuant to the tax laws of the U.S.

64.     Kenneth filed this complaint in the United States District Court regarding his removal from Holding Company, and for damages and other relief on behalf of Holding Company because Holding Company is a U.S. corporation.

/ / /

/ / /

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18                        -18-
Case No. _____
COMPLAINT

1

**DERIVATIVE CLAIMS**

2      65.    Kenneth asserts the following claims derivatively on behalf of Holding

3   Company.  At all times mentioned herein, Kenneth was and is shareholder of

4   Estates.  Estates is Holding Company's parent company and controls Holding

5   Company, through Estate's ownership and control of Oro BVI and Oro Barbados, as

6   reflected in Exhibit 2.  Therefore, Kenneth derivatively brings these claims on

7   Holding Company's behalf pursuant to the concept of multi-tier derivative standing.

8      66.    Under Delaware law applicable to Holding Company, a derivative

9   claim brought by the shareholder of a parent company (Estates) on behalf of the

10  subsidiary (Holding Company) must satisfy the requirements of the law applicable

11  to the controlling parent entity (Estates).  Under Hong Kong law, a shareholder may

12  bring a derivative action involving fraud and oppression of minority shareholders

13  without notice or demand on the board where the board controls the company and

14  would not take corrective action for the benefit of the minority shareholders.

15  Kenneth was not required to make a demand on Holding Company's board prior to

16  bringing this lawsuit because such a demand would be futile given that the Director

17  Defendants control Holding Company, have engaged in self-dealing, fraud and

18  oppression of minority shareholders through the payment of the "Advisor Fees" to

19  the directors of Mt. Oscar: i.e., themselves, and would not act against themselves for

20  the benefit of Kenneth and other minority shareholders who are harmed by the

21  Earnings Stripping Scheme.

22

23

**FIRST CLAIM FOR RELIEF**

24  **(18 U.S.C. § 1962(c) Civil RICO Claim – By Kenneth on Behalf of Holding**

25  **Company Against Director Defendants and Mt. Oscar)**

26     67.    Kenneth re-alleges and incorporates by this reference paragraphs 1

27  through 66 of this Complaint.

28  / / /

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18                    -19-

Case No. _____
COMPLAINT

1    68.    Director Defendants and Mt. Oscar are each "persons" as defined in 18
2 U.S.C. § 1961(3).

3    69.    Holding Company is an "enterprise" as defined by 18 U.S.C. § 1961,
4 engaged in and whose activities affect interstate commerce.  Director Defendants are
5 the corporate directors of Holding Company. Mt. Oscar is an "enterprise" as defined
6 by 18 U.S.C. § 1961, engaged in and whose activities affect interstate commerce.

7    70.    The Director Defendants and Mt. Oscar agreed to and did participate in
8 the conduct of Holding Company's affairs through multiple related acts constituting
9 a pattern of racketeering activity and for the unlawful purpose of furthering the
10 Earnings Stripping Scheme as alleged above.

11    71.    Pursuant to and in furtherance of the Earnings Stripping Scheme, the
12 Director Defendants and Mt. Oscar knowingly, and with intent, devised and are
13 perpetuating a scheme to defraud the United States government of tax revenues by
14 using the mail and interstate wire communications, including telephone, internet and
15 financial wire transmissions, to obtain corporate approval of the Earnings Stripping
16 Scheme, to pay materially false Advisor Fees, to claim materially false expenses in
17 the form of Advisor Fees without providing Advisory Services, and to transmit false
18 tax information to tax preparers and the United States government, in violation of 18
19 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), and which also
20 violates 26 U.S.C. 7201 (evading or defeating tax), and 26 U.S.C § 7206 (fraud and
21 false statements).

22    72.    Pursuant to and in furtherance of the Earnings Stripping Scheme, the
23 Director Defendants and Mt. Oscar knowingly, and with intent, devised and are
24 perpetuating a scheme to conceal or disguise the nature of funds falsely
25 characterized as Advisor Fees to lower Holding Company's taxable income to
26 defraud the United States government of tax revenues in violation of 18 U.S.C. §
27 1956 (money laundering), which conduct also violates 26 U.S.C. § 7201 and 7206.
28 / / /

1    73.    The acts of mail fraud, wire fraud, money laundering, and tax evasion

2 set forth above occurred in 2015, 2016, 2017 and will occur in 2018, 2019 and

3 beyond unless terminated, and such acts constitute a pattern of ongoing racketeering

4 activity pursuant to 18 U.S.C. § 1961(5).

5    74.    The Director Defendants and Mt. Oscar have knowingly directly and

6 indirectly conspired to conduct and participate  in the conduct of the Holding

7 Company's affairs to carry out the Earnings Stripping Scheme through the pattern of

8 racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

9    75.    Holding Company suffered and will continue to suffer direct injury to

10 its business and property as a direct and proximate result of the Director

11 Defendants' and Mt. Oscar's racketeering activities and violations of 18 U.S.C.

12 1962(c)  because the racketeering activities expose Holding Company to civil and

13 criminal liability under the federal laws referenced above.

14    76.    Therefore, the Court should:

15        a.    Order Director Defendants and Mt. Oscar to pay compensatory

16            damages to Holding Company in an amount to be proven at trial,

17            plus interest;

18        b.    Order Director Defendants and Mt. Oscar to pay treble damages

19            under the RICO statute, plus interest; and

20        c.    Order Director Defendants and Mt. Oscar to pay Holding

21            Company's attorney's fees expended to pursue this action.

22

23            **SECOND CLAIM FOR RELIEF**

24    **(18 U.S.C. § 1962(d) Civil RICO Conspiracy – By Kenneth on Behalf of**

25        **Holding Company Against Director Defendants and Mt. Oscar)**

26    77.    Kenneth re-alleges and incorporates by this reference paragraphs 1

27 through 76 of this Complaint.

28 / / /

1    78.    Director Defendants and Mt. Oscar are each "persons" as defined in 18

2  U.S.C. § 1961(3).

3    79.    Holding Company is an "enterprise" as defined by 18 U.S.C. § 1961,

4  engaged in and whose activities affect interstate commerce.  Director Defendants are

5  the corporate directors of Holding Company. Mt. Oscar is an "enterprise" as defined

6  by 18 U.S.C. § 1961, engaged in and whose activities affect interstate commerce.

7    80.    As set forth above, the Director Defendants and Mt. Oscar agreed and

8  conspired to violate 18 U.S.C. § 1962(c).  Specifically, Director Defendants

9  conspired to use the U.S. Postal Service, telephones, and the Internet in furtherance

10  of the Earnings Stripping Scheme to pay the Advisor Fees to Mt. Oscar – and,

11  indirectly, themselves – for activities neither they nor Mt. Oscar completed on

12  behalf of Holding Company, and to improperly claim the Advisor Fees as

13  deductions on Holding Company's federal and state tax returns.  Director

14  Defendants and Mt. Oscar conspired to engage in the Earnings Stripping Scheme by

15  approving and facilitating it, and by causing Holding Company to pay improper

16  Advisor Fees, evade payment of taxes required by U.S. law, and thereby allow the

17  Director Defendants to personally receive larger payouts from Holding Company.

18    81.    The Director Defendants and Mt. Oscar have knowingly and

19  intentionally conspired and agreed to conduct and participate in the conduct of the

20  affairs of Holding Company through a pattern of racketeering activity reflected in

21  the Earnings Stripping Scheme.  The Director Defendants and Mt. Oscar knew that

22  their predicate acts were part of a pattern of racketeering activity and agreed to the

23  commission of those acts to further the Earnings Stripping Scheme described above.

24  That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) as alleged

25  above, in violation of 18 U.S.C. § 1962(d).

26    82.    Holding Company suffered and will continue to suffer direct injury to

27  its business and property as a direct and proximate result of the Director

28  Defendants' and Mt. Oscar's racketeering activities and violations of 18 U.S.C.

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-22-
Case No. _____
COMPLAINT

1 1962(d) because the racketeering activities expose Holding Company to civil and
2 criminal liability under the federal laws referenced above.

3     83.   Therefore, the Court should:

4         a.   Order Director Defendants and Mt. Oscar to pay compensatory
5             damages to Holding Company in an amount to be proven at trial;

6         b.   Order Director Defendants and Mt. Oscar to pay treble damages
7             under the RICO statute, plus interest; and

8         c.   Order Director Defendants and Mt. Oscar to pay Holding
9             Company's attorney's fees expended to pursue this action.

10

11 **THIRD CLAIM FOR RELIEF**

12 **(Breach Of Duty Of Loyalty – By Kenneth on Behalf of Holding Company**
13 **Against Director Defendants)**

14     84.   Kenneth re-alleges and incorporates by this reference paragraphs 1
15 through 83 of this Complaint.

16     85.   Director Defendants are directors of Holding Company.  In accordance
17 with their fiduciary duty of loyalty owed to Holding Company, Director Defendants
18 owed Holding Company a duty of undivided and unselfish loyalty, which obligated
19 them (among other requirements) to refrain from obtaining any personal benefit
20 through their position as a director by self-dealing.

21     86.   By engaging in the conduct alleged herein, Director Defendants have
22 knowingly, consistently, and repeatedly violated their fiduciary duty of loyalty owed
23 to Holding Company and its shareholder, at Holding Company's expense, through
24 their self-dealing with regards to the Advisor Fees payments they received pursuant
25 to the Earnings Stripping Scheme.

26     87.   As a direct and proximate result of the conduct of Director Defendants,
27 Holding Company has been damaged in an amount to be proven at trial, and has
28 been exposed to potential civil and criminal penalties under United States and

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-23-
Case No. _____
COMPLAINT

1  applicable state laws.

2      88.   Therefore, the Court should:

3          a.   Order Director Defendants to pay compensatory damages and

4              punitive damages to Holding Company in an amount to be

5              proven at trial for the Director Defendants' breach of the duty of

6              loyalty, plus interest;

7          b.   Order Director Defendants to return all Advisor Fee payments

8              they received to Holding Company, plus interest, as restitution;

9          c.   Issue an order reinstating Kenneth to his position as director of

10             Holding Company;

11         d.   Issue an order removing Director Defendants as directors of

12             Holding Company;

13         e.   Issue an order appointing one or more independent directors to

14             Holding Company's board of directors;

15         f.   Issue an injunction requiring Holding Company and Director

16             Defendants to cease making any Advisor Fee payments to Mt.

17             Oscar or any other entity or individual; and

18         g.   Issue an injunction requiring the Director Defendants to

19             immediately return any and all Advisor Fee payments they

20             received to Holding Company.

21

22                     **FOURTH CLAIM FOR RELIEF**

23   **(Breach Of Duty Of Good Faith – By Kenneth on Behalf of Holding Company**

24                 **Against Director Defendants)**

25     89.   Kenneth re-alleges and incorporates by this reference paragraphs 1

26 through 88 of this Complaint.

27     90.   Director Defendants are directors of Holding Company.  In accordance

28 with their fiduciary duty of good faith owed to Holding Company as Holding

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

-24-

Case No. _____

COMPLAINT

1  Company's directors, Director Defendants were obligated (among other
2  requirements) to refrain from intentionally engaging in actions that violate
3  applicable law.

4      91.    By engaging in the Earnings Stripping Scheme alleged herein in direct
5  violation of federal and state laws, Director Defendants have knowingly,
6  consistently, and repeatedly violated their fiduciary duty of good faith owed to
7  Holding Company and its shareholder.

8      92.    As a direct and proximate result of the conduct of Defendants Howard,
9  Fung, Agnes, and Cheung, Holding Company has been damaged in an amount to be
10 proven at trial, and has been exposed to potential civil and criminal penalties under
11 United States and applicable state laws.

12     93.    Therefore, the Court should:

13          a.    Order Director Defendants to pay compensatory and punitive
14               damages to Holding Company in an amount to be proven at trial
15               for the Director Defendants' breach of the duty of good faith,
16               plus interest;

17          b.    Order Director Defendants to return all Advisor Fee payments
18               they received to Holding Company, plus interest, as restitution;

19          c.    Issue an order reinstating Kenneth to his position as director of
20               Holding Company;

21          d.    Issue an order removing Director Defendants as directors of
22               Holding Company;

23          e.    Issue an order appointing one or more independent directors to
24               Holding Company's board of directors;

25          f.    Issue an injunction requiring Holding Company and Director
26               Defendants to cease making any Advisor Fee payments to Mt.
27               Oscar or any other entity or individual; and

28  / / /

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18

Case No. _____

-25-                          COMPLAINT

g.     Issue an injunction requiring the Director Defendants to immediately return any and all Advisor Fee payments they received to Holding Company.

## FIFTH CLAIM FOR RELIEF

### (Breach Of Duty Of Care – By Kenneth on Behalf of Holding Company Against Director Defendants)

94.     Kenneth re-alleges and incorporates by this reference paragraphs 1 through 93 of this Complaint.

95.     Director Defendants are directors of Holding Company.  In accordance with their fiduciary duty of care owed to Holding Company as Holding Company's directors, Director Defendants were obligated (among other requirements) to refrain from engaging in grossly negligent conduct in their management of Holding Company.

96.     By engaging in the Earnings Stripping Scheme alleged herein, Director Defendants have violated their fiduciary duty of care owed to Holding Company and its shareholder by engaging in grossly negligent conduct in their management of Holding Company.

97.     As a direct and proximate result of the conduct of Director Defendants, Holding Company has been damaged in an amount to be proven at trial, and has been exposed to potential civil and criminal penalties under United States and applicable state laws.

98.     Therefore, the Court should:

a.     Order Director Defendants to pay compensatory and punitive damages to Holding Company in an amount to be proven at trial for the Director Defendants' breach of the duty of care, plus interest;

/ / /

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-26-
Case No. _____
COMPLAINT

1      b.   Order Director Defendants to return all Advisor Fee payments

2           they received to Holding Company, plus interest, as restitution;

3      c.   Issue an order reinstating Kenneth to his position as director of

4           Holding Company;

5      d.   Issue an order removing Director Defendants as directors of

6           Holding Company;

7      e.   Issue an order appointing one or more independent directors to

8           Holding Company's board of directors;

9      f.   Issue an injunction requiring Holding Company and Director

10          Defendants to cease making any Advisor Fee payments to Mt.

11          Oscar or to any other entity or individual; and

12     g.   Issue an injunction requiring the Director Defendants to

13          immediately return any and all Advisor Fee payments they

14          received to Holding Company.

15

16                    **SIXTH CLAIM FOR RELIEF**

17   **(Declaratory Relief – By Kenneth on Behalf of Holding Company To Establish**

18              **The Advisor Fees Were Illegally Paid**

19              **in Violation of Federal and State Law)**

20     99.   Kenneth re-alleges and incorporates by this reference paragraphs 1

21   through 98 of this Complaint.

22     100.   Kenneth, on behalf of Holding Company, contends that the Advisor

23   Fees were illegally paid to Mt. Oscar in violation of federal and state law and should

24   be returned to Holding Company.

25     101.   Upon information and belief, Director Defendants contend that the

26   Advisor Fees were properly paid for the Advisor Services Mt. Oscar purportedly

27   provided to Holding Company.

28   / / /

1    102.   Kenneth, on behalf of Holding Company, seeks a declaration that the

2  Advisor Fees payments made by Holding Company were illegally made in violation

3  of federal and state law and should be returned to Holding Company.

4

5                              **INDIVIDUAL CLAIMS**

6    103.   Kenneth brings the claims below on his own behalf.

7                          **SEVENTH CLAIM FOR RELIEF**

8            **(Attempted Wrongful Removal Pursuant to 8 Delaware**

9    **Code, § 225 – Against Director Defendants and for Declaratory Relief)**

10   104.   Kenneth re-alleges and incorporates by this reference paragraphs 1

11  through 103 of this Complaint.

12   105.   At all relevant times, Kenneth was a director of Holding Company,

13  which is a Delaware corporation governed by Delaware law.

14   106.   Pursuant to 8 Delaware Code, § 225, only the shareholders of a

15  Delaware corporation have the power to vote to remove corporate directors.

16   107.   Oro Barbados is the sole shareholder of Holding Company.  Kenneth is

17  unaware of any action by Oro Barbados to remove Kenneth as a director of Holding

18  Company.  Kenneth did not receive any notice of a meeting of (a) Holding

19  Company's shareholder Oro Barbados (or its directors), (b) Oro Barbados'

20  shareholder Oro BVI (or its directors), or (c) any notice of a meeting of Oro BVI's

21  shareholder Estates (or its directors).  Having not received any such notices,

22  Kenneth did not participate in any director or shareholder vote to remove him as a

23  director of Holding Company.

24   108.   Upon information and belief, at some point in 2017, notwithstanding

25  lack of any such notices, the Director Defendants purported to take action to remove

26  Kenneth as a director of Holding Company.  As a result, Kenneth has been deprived

27  of the right to participate as a Holding Company director and to protect his interests

28  as a shareholder of Estates, including receipt as a shareholder of lawful income

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18
-28-
Case No. _____
COMPLAINT

1   derived from Holding Company's ownership of real property in California, New

2   York and elsewhere.

3       109.   Thus, Director Defendants' attempted removal of Kenneth as director

4   of Holding Company was wrongful and is void under 8 Delaware Code, § 225.

5       110.   Therefore, the Court should:

6           a.   Issue an order declaring the Director Defendants' conduct

7               unlawful and void, and invalidating any purported removal of

8               Kenneth's as director of Holding Company;

9           b.   If necessary, issue an order reinstating Kenneth to his position as

10              director of Holding Company; and

11          c.   Issue an order appointing one or more independent directors to

12              Holding Company's board of directors to prevent interference

13              with Kenneth's service as a director of Holding Company.

14

15                      **EIGHTH CLAIM FOR RELIEF**

16                  **(Declaratory Relief – Kenneth Is Not Liable**

17                    **For Director Defendants' Actions)**

18      111.   Kenneth re-alleges and incorporates by this reference paragraphs 1

19   through 110 of this Complaint.

20      112.   There is an actual and existing justiciable controversy between Kenneth

21   and Director Defendants relating to Kenneth's potential liability for Director

22   Defendants' illegal actions in furtherance of the Earnings Stripping Scheme alleged

23   above.

24      113.   Kenneth contends that he is not liable or responsible for the Director

25   Defendants' actions in connection with the Earnings Stripping Scheme because he

26   did not knowingly participate in those actions, and has sought to remedy the

27   consequences as alleged above.

28   / / /

Rutan & Tucker, LLP
attorneys at law

2763/034901-0001
12750078.9 a12/19/18                    -29-

Case No. _____
COMPLAINT

1    114.   Upon information and belief, Director Defendants contend that
2  Kenneth should be held jointly liable with the Director Defendants if the Director
3  Defendants are found liable in connection with the Earnings Stripping Scheme.

4    115.   Kenneth seeks declaratory relief that he is not liable for the Director
5  Defendants' actions in furtherance of the Earnings Stripping Scheme.

6    116.   Therefore, the Court should issue a declaration that Kenneth is not
7  liable for Director Defendants' actions in furtherance of the Earnings Stripping
8  Scheme.

9

10                                    **PRAYER**

11    WHEREFORE, Kenneth prays for the following relief:

12        a.    Compensatory damages to Holding Company in an amount to be
13              proven at trial, and treble damages under the RICO statute in the
14              First Cause of Action (18 U.S.C. § 1962(c) Civil RICO Claim),
15              plus interest;

16        b.    Compensatory damages to Holding Company in an amount to be
17              proven at trial, and treble damages under the RICO statute in the
18              Second Cause of Action (18 U.S.C. § 1962(d) Civil RICO
19              Conspiracy), plus interest;

20        c.    Compensatory and punitive damages to Holding Company in an
21              amount to be proven at trial for the Director Defendants'
22              breaches of their fiduciary duties to Holding Company, plus
23              interest;

24        d.    An injunction requiring Holding Company to cease making any
25              Advisor Fee payments to Mt. Oscar;

26        e.    An injunction requiring the Director Defendants to immediately
27              return any and all Advisor Fee payments they received to
28              Holding Company;

1     f.    Restitution and disgorgement of unjust enrichment, plus interest,

2          pursuant to all appropriate causes of action;

3     g.    A declaratory judgment that the Advisor Fees paid by Holding

4          Company to Mt. Oscar were illegal under the laws of the U.S.;

5     h.    A declaratory judgment that Kenneth is not liable for Director

6          Defendants' actions in furtherance of the Earnings Stripping

7          Scheme;

8     i.    An order invalidating Kenneth's removal as a director of

9          Holding Company;

10    j.    An order reinstating Kenneth to his position as director of

11         Holding Company;

12    k.    An order removing Director Defendants as directors of Holding

13         Company;

14    l.    An order appointing one or more independent directors to

15         Holding Company's board of directors;

16    m.   For an award of attorneys' fees and costs, pursuant to all

17         appropriate causes of action;

18    n.    For such other and further relief as this Court deems just and

19         proper.

20

21 Dated: December 19, 2018     RUTAN & TUCKER, LLP
                 MARK B. FRAZIER

22                 COREY H. COLLINS

23

24                 By: */s/ Mark B. Frazier*

25                   Mark B. Frazier
                   Attorneys for Plaintiff
                   YEUNG BING KWONG KENNETH

26

27

28

Rutan & Tucker, LLP
attorneys at law
2763/034901-0001
12750078.9 a12/19/18    -31-    Case No. _____
COMPLAINT

1

## JURY TRIAL DEMAND

2        Plaintiff Kenneth Yeung demands a trial by jury of all issues so triable on the

3  claims alleged herein.

4  Dated: December 19, 2018

RUTAN & TUCKER, LLP
MARK B. FRAZIER
COREY H. COLLINS

5

6

By: */s/ Mark B. Frazier*

7

Mark B. Frazier
Attorneys for Plaintiff
YEUNG BING KWONG KENNETH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
*attorneys at law*

2763/034901-0001
12750078.9 a12/19/18

-32-

Case No. _____

COMPLAINT