UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**YEUNG BING KWONG KENNETH, ET AL.,**

Plaintiffs,

v.

**YEUNG CHI SHING HOLDING (DELAWARE), INC., ET AL.,**

Defendants.

Case No. 18-cv-07644-YGR

**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND (2) DENYING AS MOOT INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF KENNETH'S INDIVIDUAL CLAIM 7 AND TO STRIKE CLAIMS FOR RELIEF SEEKING PLAINTIFF KENNETH'S REINSTATEMENT AS DIRECTOR**

Re: Dkt. Nos. 42, 45, 55

Individual plaintiff Yeung Bing Kwong Kenneth ("Kenneth"), and entity plaintiffs Prestige Holdings Ltd. ("Prestige"), and Commercial Triumph Ltd. ("Commercial," together, "entity plaintiffs") bring this derivative and individual action against entity defendants Yeung Chi Shing Holding (Delaware), Inc ("Yeung Holding"), and Mount Oscar Limited ("Mt. Oscar," together "entity defendants"), and individual defendants Yeung Ping Leung Howard ("Howard"), Yeung Luk Pui Lan Agnes ("Agnes"), Fung Chung Yee Caroline ("Fung"), Cheung Kit Man Melina ("Cheung," and, collectively, "director defendants" or "individual defendants").[1]  Kenneth, Prestige, and Commercial bring a second amended complaint concerning an alleged ongoing earning stripping and tax evasion scheme based on purported management and advisory fees that was initiated in 2015.  (Dkt. No. 40 at 2.)  Plaintiffs bring eight derivative and individual claims against defendants.  The six derivative claims asserted by the entity plaintiffs include: (i) violation

---

[1] As discussed herein, because this matter involves multiple individuals from the same family, here the Yeung family, the Court adopts the parties' convention in addressing Yeung family parties by first name to avoid confusion.

of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against director defendants and Mt. Oscar; (ii) violation of RICO, 18 U.S.C. § 1962(d), against director defendants and Mt. Oscar; (iii) breach of the duty of loyalty against director defendants; (iv) breach of the duty of good faith against director defendants; (v) breach of the duty of care against director defendants.; and (vi) declaratory relief to establish that advisor fees and other diversions were improperly and illegally paid in violation of federal and state law. Kenneth also asserts the following two individual claims: (vii) wrongful removal pursuant to 8 Delaware Code § 225 against director defendants; and (viii) declaratory relief that Kenneth is not liable for director defendants' actions.

Now before the Court are three motions to dismiss filed by defendants. First, director defendants seek to dismiss claim 7 under Rule 12(b)(1), or alternatively Rule 12(b)(6), and to strike claims for relief seeking plaintiff Kenneth's reinstatement as director under Rule 12(f). (Dkt. No. 42.) Second, Yeung Holding seeks to dismiss the operative second amended complaint under Rule 12(b)(6) and Rule 23.1. (Dkt. No. 45.) Third, Mt. Oscar substantively joins Yeung Holding's motion to dismiss.[2] (Dkt. No. 55.)

Having carefully reviewed the pleadings, the papers submitted on each motion, the parties' oral arguments at the hearing held on December 17, 2019, and for the reasons set forth more fully below, the Court finds that plaintiffs are inadequate representatives under Rule 23.1. Accordingly, the Court **GRANTS** Yeung Holding's and Mt. Oscar's motion to dismiss the second amended complaint and **DENIES AS MOOT** individual defendants' motion to dismiss Plaintiff Kenneth's Individual Claim 7 and to strike claims for relief seeking plaintiff Kenneth's reinstatement. However, given the severity of the allegations, the Court **GRANTS** plaintiffs leave to amend to substitute a proper plaintiff.

I.  **BACKGROUND**

The Court summarizes the allegations from the operative second amended complaint.

---

[2] The individual defendants also join Yeung Holding's motion to dismiss. (*See* Dkt. No. 49 (notice of joinder).)

2

Subject-matter jurisdiction in this case is asserted under federal question jurisdiction, 28 U.S.C. 28 U.S.C. § 1331 on the basis of the RICO claims in the first two causes of action. (Dkt. No. 40 at ¶ 12.) The Court is alleged to have supplemental jurisdiction over the state law claims – asserted derivatively on behalf of Yeung Holding, by the entity plaintiffs and individually on plaintiff's own behalf, under 28 U.S.C. § 1367(a) and 28 U.S.C. § 2201. (*Id.*)

### A. The Relevant Entities

The matter concerns the corporate governance of a family-owned business in Hong Kong, China. The ultimate parent company in this matter is Hong Kong, China company Yeung Chi Shing Estates, Ltd. ("Estates"). (*Id.* at ¶ 1.) Estates is owned through entities either owned and/or controlled by Kenneth and Kenneth's siblings, and Kenneth's deceased sibling's surviving widow. (*Id.* at ¶ 4.) Estates owns and controls defendant Yeung Holding as follows: Estates owns 65.70% of Oro Holdings, Ltd., a British Virgin Islands entity ("Oro BVI"); Oro BVI, in turn, wholly owns Oro Holdings, Inc., a Barbados entity ("Oro Barbados"); Oro Barbados, in turn, wholly owns Yeung Holding. (*Id.* at ¶ 16.) In 1986, Estates acquired a 99.5% controlling interest in defendant Mt. Oscar. (*Id.* at ¶ 29.) Estates, Oro BVI, and Oro Barbados are not parties to this litigation.

Defendant Yeung Holding is incorporated in Delaware and has its principal place of business in San Francisco, California. (*Id.* at ¶¶ 4, 18.) Yeung Holding was formed by Kenneth's late father Yeung Chi Wan ("Chi Wan") in 1981 to invest in United States real estate. (*Id.* at ¶ 18.) Yeung Holding serves as the parent corporation to a large number of United States entities that hold United States real estate, approximately two-third of which are organized under California law and have their principal place of business in California. (*Id.* at ¶¶ 4, 18.) Yeung Holding is the highest-level United States subsidiary and owns real estate assets in California and New York worth millions or billions of United States dollars. (*Id.* at ¶ 5.)

Defendant Mt. Oscar is a Hong Kong, China company. (*Id.* at ¶ 23.) At the time it was acquired in 1986, Mt. Oscar was a "shelf company," meaning that it had existed for a period of time but had conducted no business activity. (*Id.* at ¶ 29.) Mt. Oscar has never held any Yeung family assets or engaged in any trade or business. (*Id.*)

The entity plaintiffs, Prestige and Commercial, are each British Virgin Islands companies

and shareholders of Estates. (*Id.* at ¶ 15.) Kenneth is a director of both entity plaintiffs, and signed the verification statement attached to the second amended complaint on behalf of the entity plaintiffs. (*Id.* at ¶ 15, pp. 39-40.)

### B. The Individual Parties

Plaintiff Kenneth is a citizen of Canada and Hong Kong China, presently residing in Hong Kong, China, and is a former director of Estates through a nominee entity.[3] (Dkt. No. 40 at ¶ 14.) Kenneth is a director of both Commercial and Prestige. (*Id.* at ¶ 15.) Kenneth was also a director of Yeung Holding, Mt. Oscar, and a number of Estates' other United States subsidiaries until sometime in 2017. (*Id*. at ¶ 17.) Kenneth was removed as a director from Yeung Holding without notice, and now contends that his removal is unlawful and void. (*Id.*)

Defendant Howard is a citizen of the United Kingdom and Hong Kong, China. (*Id.* at ¶ 19.) At all relevant times, Howard served and currently serves as a director of Yeung Holding and Mt. Oscar. (*Id.*) Howard further sits on several United States subsidiaries owned by Yeung Holding. (*Id.*) Howard is Kenneth's younger brother. (*Id.* at ¶¶ 4, 28.)

Defendant Agnes is a citizen of Hong Kong, China and the United States. (*Id.* at ¶ 21.) Agnes is the widow of Yeung Bing Kin Alan ("Alan"), one of Kenneth's deceased brothers. (*Id.* at ¶¶ 21, 28.) Since late 2016, Agnes has served and currently serves as director of Yeung Holding and Mt. Oscar. (*Id.* at ¶ 21.) Agnes maintains some ownership and/or control over Estates through the estate of Alan. (*Id*. at ¶ 28.)

Defendant Fung is a citizen of Canada and Hong Kong, China. (*Id.* at ¶ 20.) At all relevant times, Fung served and currently serves as a director of Yeung Holding. (*Id.*) Fung was

---

[3] Although not explicitly referenced in the Second Amended Complaint, the allegations imply that the "nominee entit[ies]" through which Kenneth owns Estates include both Prestige and Commercial, as well as through Kennet Nominee Ltd. No allegation is included in the second amended complaint as to Kenneth's ownership interest in the entity plaintiffs or Kennet Nominee Ltd. (*See also* Dkt. 1 at 2 (referring to entities as "Kenneth nominees," and "Kenneth's wholly-owned companies"); Dkt. No. 13 (first amended complaint) ("Kenneth, through the Kenneth Nominees (Plaintiff Prestige Holding Ltd. And Plaintiff Commercial Triumph Ltd., both Hong Kong China companies), was and is a shareholder – and a former director – of Estates."); Dkt. No. 57 at 11 (opposition) ("[T]he Entity Plaintiffs – and by extension Kenneth – can adequately represent the interests of other shareholders through the derivative claims.").)

appointed tax consultant of Estates in May 2014. (*Id.*) Fung has admitted that she has never actually been qualified as a United Kingdom charted account. (*Id.* at ¶ 38.)

Defendant Cheung is a citizen of Hong Kong, China. (*Id.* at ¶ 22.) At all relevant times, Cheung served and currently serves as a director of Yeung Holding.

### C. General Allegations

In short, Kenneth alleges the existence of an ongoing earnings stripping and tax evasion scheme initiated in 2015 by some Yeung family members, including one or more of the individual defendants, that was facilitated unwittingly by a major United States based international law firm. (*Id.* at ¶¶ 1, 31, 37, 39-41.) The scheme involves the payment of almost US $15 million in purported "management and advisory fees" by Yeung Holding to Mt. Oscar, in exchange for "management and advisory services" for the management of the United States real estate holdings that were never actually provided by Mt. Oscar or by the ultimate recipients, Kenneth and the individual defendants. (*Id.* at ¶¶ 1, 32-33.) The scheme also involves other types of preferential payments, including a US $3.4 million "incentive bonus," and personal and inflated staff expenses, that resulted in Yeung Holding and its subsidiaries taking such expenses as business deductions. (*Id.*) The motivation for this scheme was to evade paying required United States federal and state taxes, and to allow certain Yeung family members to improperly receive a much greater percentage of corporate funds than they normally would receive based upon their percentage shareholder interests in Estates. (*Id.* at ¶¶ 1, 32-33, 35-36.)

The Court chronologically summarizes the actions in the alleged scheme according to the second amended complaint: On November 10, 2015, a United States based global law firm issued a memorandum analyzing and evaluating the proper arms-length valuation of the advisor fees the law firm was told would be paid by Yeung Holding to Mt. Oscar for advisor services. (*Id.* at ¶ 40.) At that time, the directors of Mt. Oscar were Kenneth, Howard, and Alan. (*Id.* at ¶ 41.) Fung was the tax consultant to Mt. Oscar and Cheung was company's secretary. (*Id.*) Kenneth was not provided a copy of the memorandum in advance of the board meeting where it was first discussed. (*Id.*)

Based on the information provided to him, including the memo, and based on Alan's

reputation for being heavily involved in the Yeung Holding real estate business, Howard's support, and Fung's professional advice as a tax consultant, Kenneth believed that Mt. Oscar would render advisor services in exchange for reasonable advisor fees. (*Id.* at ¶¶ 41, 42.) Accordingly, On March 3, 2016, Mt. Oscar directors, including Kenneth, adopted written resolutions, without a meeting, approving the advisor agreement. (*Id.* at ¶¶ 42, 50.) This approval was made effective retroactively to April 1, 2015, the date on which Mt. Oscar supposedly began providing advisor services to Yeung Holding. (*Id.* at ¶ 42.) Yeung Holding's board, of which Kenneth was a director, also passed a similar resolution approving the advisor agreement. (*Id.* at ¶ 42.)

From 2015 until at least 2017, Kenneth alleges that he is unaware of Mt. Oscar or anyone on Mt. Oscar's behalf ever performing any services on behalf of Yeung Holding. (*Id.* at ¶ 7.) Kenneth was never asked to perform any services in exchange for payments he received. (*Id.* at ¶¶ 7, 47.) Neither Mt. Oscar nor anyone on its behalf actually rendered any advisor services to Yeung Holding or its subsidiaries. (*Id.* at ¶¶ 36, 47.) Between this time period, specifically January 1, 2015 and March 31, 2017, Yeung Holding paid HK $113,694,467 (US $14,765,515) in pre-tax advisor fees. (*Id.* at ¶ 43.) Kenneth, Howard, Agnes, and Yeung Ho Wai Ping ("Ping"), a current director of Mt. Oscar and the widow of Kenneth's brother Raymond, received advisor fees in the same amounts as Kenneth. (*Id.* at ¶¶ 44, 46.) Kenneth's sisters, Yeung Bick Yee Amy ("Amy") and Yeung Eng Yee Janet ("Janet"), each received a consultancy fee half of the amount received by Kenneth. (*Id.* at ¶ 44.)

Financial statements from Mt. Oscar indicate that that the payment for advisor services were split between a "Consultancy Fee" and "Director's Remuneration." (*Id.* at ¶¶ 45, 46.) Kenneth, Alan and then later Agnes after Alan's death, Howard, and Ping received the Director's Remuneration amounts. (*Id.* at ¶ 46.) The Consultancy Fee was paid to other Yeung family members that were not directors of Mt. Oscar. (*Id.*) The fees constituted part of a scheme where no individual did any work for either Yeung Holding or Mt. Oscar, and payments would flow to Howard, Agnes, and other Yeung family members. (*Id.* at ¶¶ 47-49.) Kenneth also received advisor fees payments from April 2016 to May 2018. (*Id.* at ¶ 48.)

Following Alan's passing in September 2016, Kenneth began making inquiries into the propriety and legality of the advisor fees in person and in several letters in July and September 2017. (*Id.* at ¶¶ 50-52.) Kenneth continued making inquiries as to the legality of the fees and the work being performed in exchanged for these fees through several letters and in board meetings in 2017. (*Id.* at ¶¶ 53-57.)

In retaliation for these inquiries, Kenneth's nominee, Kennet Nominee Limited, was not re-elected as a member of Estates' board of directors at the annual general meeting in December 2017. (*Id.* at ¶ 58.) At some point in 2017, Kenneth had also been removed as a director of Yeung Holding, and several other Yeung family owned subsidiaries. (*Id.* at ¶¶ 62-63.) A January 27, 2018 notice for Mt. Oscar directors included an agenda item to remove Kenneth as a director of Mt. Oscar at the January 31, 2018 board meeting in Hong Kong, China. (*Id.* at ¶ 58.) In response, Kenneth sent a letter on January 31, 2018 again outlining his concerns over the payment of advisor fees made by Yeung Holding to Mt. Oscar given that nobody was performing services for Yeung Holding; Mt. Oscar directors did not refute or rebut these statements, and did not provide any information on the services performed for Yeung Holding.[4] (*Id.* at ¶¶ 59, 60.) Kenneth was ultimately removed as a director of Mt. Oscar on March 9, 2018. (*Id.* at ¶ 61.)

From the date of the Mt. Oscar approval of the advisor agreement in March 2016 to the date when Kenneth was removed from the Mt. Oscar board in March 2018, Kenneth received approximately US $3.7 million in advisor fees. (*Id.* at ¶ 64.) Kenneth alleges that he has deposited all of the funds he has received for advisor fees in a separate bank account and that, upon a judicial finding, he will promptly return all such funds he has received to the appropriate recipient. (*Id.*) Since Kenneth's departure, Mt. Oscar released a document dated October 15,

---

[4] The Court notes that the second amended complaint also contains some allegations of some work being performed by some of the other individuals. Howard performed acts including "[d]irecting and participating in the management of [Yeung Holding]'s U.S. operations," and made "frequent trips" to the United States to monitor properties. (*Id.* at ¶ 19.) Agnes, Fung, and Cheung performed acts that included directing and participating in the management of Yeung Holding, (*Id.* at ¶¶ 20, 21, 22) and Fung also coordinated the hiring of advisors on behalf of at least one subsidiary of Yeung Holding. (*Id.* at ¶ 37.) Kenneth also "knew that Alan was heavily involved in the Yeung Family's U.S. real estate business and believed Alan was knowledgeable about real estate investments" before his death. (*Id.* at ¶ 41.)

7

2018 confirming that payments are for advisor fees, and explicitly referencing Kenneth's earlier payments. (*Id.* at ¶ 65.)

### D. Other Relevant Background[5]

Kenneth has brought several lawsuits in Hong Kong, China with respect to both the Estates and Mt. Oscar boards, as well as against the individual defendants. The Court summarizes these lawsuits below.

Mt. Oscar's Board. In May 2018, Kenneth sued Mt. Oscar seeking to invalidate his removal from the Mt. Oscar board, and enjoin further resolutions to remove him. (Dkt. No. 47-1 (*Kenneth Yeung v. Mount Oscar Limited*, HCMP 773/2018).) The court ruled against Kenneth in December 2018. (*Id.*) The appeal was dismissed in June 2019. (Dkt. No. 47-2 (*Kenneth Young v. Mount Oscar Limited*, CACV 26/2019).)

Estates' Board. In September 2017, Kenneth and his nominee entity sued Estates and Howard, among others, and claimed Kenneth or his nominee entity should be chairman of the Estates board under an alleged "rotation agreement" among family members for the year commencing in April 1, 2017. (Dkt. No. 47-3 (*Kenneth Yeung v. Kennet Nominee Limited v. Yeung Chi Shing Estates Limited*, HCA 1564/2017).) Kenneth and his nominee entity amended his statement of claim in March 2018 to change a number of details. (*Id.*) According to Yeung Holding, this case has not progressed any further. (Dkt. No. 45 at 14.)

Foundation Shareholders. In 2017, Kenneth sued Howard and one of the foundations that owns Estates, among other entities, related to the governance issues of the foundation. (Dkt. No. 47-4 (*Kenneth Yeung v. Howard Yeung*, HCMP 1455/2017).) Kenneth received an adverse

---

[5] Yeung Holding requests that the Court takes judicial notice of related proceedings in other jurisdictions, including in Hong Kong, China. (*See* Dkt. No. 48.) "[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Specifically, courts may take judicial notice of foreign judgments and court documents. *See Hilton v. Guyot*, 159 US 113, 205–06 (1895); *Yuen v. U.S. Stock Transfer Co.*, 966 F. Supp. 944, 945 n.1 (C.D. Cal. 1997) (granting defendant's request for judicial notice of filings submitted in a British Virgin Islands proceeding in connection with defendant's motion to dismiss); *In re Ex Parte Application of Jommi*, No. C 13–80212, 2013 WL 6058201, at *1 n.1 (N.D. Cal. Nov. 15, 2013) (taking judicial notice of "foreign court documents"). Accordingly, and in light of no opposition received, the Court **GRANTS** Yeung Holding's request for judicial notice.

8

1           decision in June 2019.  (*Id.*)

2           Alleged Defamation.  In November 2017, Kenneth sued Agnes, Howard, and Cheung for defamation against him.  (Dkt. No. 47-5.)  Kenneth alleges that Agnes, Howard, and Cheung defamed him by accusing him of harassment and uncivil conduct.  (*Id.* at 11-20.)  According to Yeung Holding, the matter has not progressed after the parties filed and served defenses and replies.  (Dkt. No. 45 at 15.)

           Withdrawn Action.  In December 2017, Kenneth sued Estates, Howard, and Agnes, among others, to declare a board meeting void and invalid as part of Kenneth's attempt to stop other shareholders from not re-electing Kenneth's nominee company as a director of estates.  (Dkt. No. 47-6.)  Kenneth subsequently withdrew this action.  (Dkt. No. 47-7.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed.  *Id*. at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6)

9

is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to a nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## III. YEUNG HOLDING AND MT. OSCAR'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Yeung Holding and Mt. Oscar, joined by the individual defendants, contend that the entity plaintiffs are inadequate representatives under Rule 23.1 to pursue derivative claims. Plaintiffs oppose Yeung Holding and Mt. Oscar's motions, and contend that they are adequate representatives under Rule 23.1.

A shareholder derivative action may only be maintained by a representative who will "fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1. Shareholder derivative suits are generally "a remedy of last resort." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (citation omitted). This follows from the "basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991) (citation omitted). "In general, a derivative suit must be in the company's best interest in order to proceed." *In re RH S'holder Derivative Litig.*, No. 18-CV-02452-YGR, 2019 WL 580668, at *4 (N.D. Cal. Jan. 23, 2019).

First and foremost, "[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class." *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990) (citations omitted). Other factors to consider to determine adequacy of representation include:

>    (1) indications that the plaintiff is not the true party in interest;
>    (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit;
>    (3) the degree of control exercised by the attorneys over the litigation;
>    (4) the degree of support received by the plaintiff from other shareholders; . . .
>    (5) the lack of any personal commitment to the action on the part of the representative plaintiff; . . .
>    (6) the remedy sought by plaintiff in the derivative action;
>    (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and
>    (8) plaintiff's vindictiveness toward the defendants.

*Id.* (citations omitted). "Courts may also consider a potential representative's outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit." *RePET Inc. v. Zhao*, EDCV 15-2315-VAP (SPx), 2016 WL 11518482, at *5 (C.D. Cal. June 28, 2016) (internal quotation marks omitted). "Defendants bear the burden of proof to show [that a p]laintiff is not an adequate representative under Rule 23.1." *Id.* (citing *Wixon v. Wyndham Resort Dev. Corp.*, C 07-2361-JSW, 2009 WL 3353445, at *9 (N.D. Cal. Oct. 19, 2009); *Quantum Tech. Partners I, L.P. v. Altman Browning and Co.*, No. 08-cv-376-BR, 2009 WL 1795574, at *7 (D. Or. June 23, 2009)).

Here, defendants have met their burden because Prestige and Commercial cannot demonstrate that they are free of economic interests that are antagonistic to the class. Kenneth, as a director and the individual who controls both Prestige and Commercial, is not free of any economic interests that are adverse to the interests of the other shareholders. Kenneth was a director on the board of both Yeung Holding and Mt. Oscar during the relevant time period. As a director, he personally twice approved the agreement underlying the purported scheme, and further received the fees for which he now contends are improper and illegal. Kenneth therefore has a monetary interest in minimizing his own ultimate liability.[6] Indeed, this minimization is readily apparent in the second amended complaint where Kenneth is seeking to hold every director on the

---

[6] Plaintiffs explicitly concede in the opposition brief that Kenneth's "personal economic interests would actually be furthered by *not* pursuing the derivative claims here." (Dkt. No. 57 at 20 (emphasis original); *see also id.* at 4 ("Kenneth's own pecuniary interests will actually be harmed if the Plaintiffs succeed in this action, as he will have to return US$3.7 million to [Yeung Holding] if the Court grants the Plaintiffs the relief they seek.").)

11

board of Mt. Oscar and Yeung Holding *but* himself accountable for higher damages including treble damages.[7] (*See* Dkt. No. 40 at ¶¶ 77 (treble damages for Mt. Oscar and individual defendants), 78 (same).) Kenneth cites to no authority – and the Court can find none – where Rule 23.1 has permitted a director who is involved in a purported illegal scheme with other board members to represent shareholders in a derivative suit under Rule 23.1 through entities wholly owned and controlled by that director.[8] *Cf. RePET Inc.*, 2016 L 11518482, at \*6 (declining to disqualify plaintiff as a Rule 23.1 representative on the limited record before the court where plaintiff was a member of the board of directors but refused to sign a personal guaranty to further fraud and subsequently resigned from the board before fraudulent activity was committed). Such a situation strains the requirements imposed by Rule 23.1 that mandate that the representative in a derivative "fairly and adequately" protect absent shareholders.

Consideration of the relevant eight factors in *Larson* further confirms that plaintiffs are not adequate representatives under Rule 23.1. Under the first *Larson* factor, "indications that the plaintiff not the true party in interest," the record is clear that the true party in interest is Kenneth, not Prestige or Commercial. Indeed, plaintiff's opposition brief is replete with concessions that both Prestige and Commercial are extensions of Kenneth.[9] (*See, e.g.*, Dkt. No. 57 at 16 ("Here, review of the relevant *Larson* factors demonstrates that the Entity Plaintiffs – and by extension

---

[7] As will be discussed, the Court cannot determine how it would be fair under Rule 23.1 to absent shareholders to hold Kenneth to a different standard as compared to the other individual defendants.

[8] Kenneth's arguments at the December 17, 2019 hearing that he had a sincere belief when he signed the agreement that services would be performed in exchange for payment but was later duped or tricked are contradicted by the allegations in the second amended complaint. As alleged, nobody performed services on behalf of Mt. Oscar for Yeung Holding, (Dkt. No. 40 at ¶55) and yet, when the agreement was executed by Kenneth and the other directors in March 2016, the approval was backdated to April 1, 2015 to cover prior alleged work performed for Yeung Holding. (*Id.* at ¶42 ("This approval was made effective retroactively to April 1, 2015, the date on which Mt. Oscar supposedly began providing Advisor Services to [Yeung Holding].").) Thus, under these allegations, Kenneth would have been aware when he twice approved the agreement that no work had been performed on behalf of Mt. Oscar for Yeung Holding.

[9] Kenneth signing the required verification statement attached to the second amended complaint on behalf of the entity plaintiffs further confirms that it is he, and not the entity plaintiffs, who is the true party in interest in this derivative lawsuit.

12

Kenneth – can adequately represent the interests of the other shareholders through the derivative claims."); at 9 ("Defendants have not shown – and could not have shown if they truly tried – that either the Entity Plaintiffs or Kenneth are 'vindictive' towards the Defendants. Rather, the SAC reveals that Kenneth's efforts to remedy . . . have been completely necessary. . . . Again, Kenneth is merely requesting a 'seat at the table' to protect [Yeung Holding]'s ultimate beneficiaries: Estates' shareholders.").) Courts have gone beyond an entity plaintiff to the owner or principal to determine whether there is a conflict in serving as an adequate representative under Rule 23.1. *See G.A. Enterprises, Inc. v. Leisure Living Cmty., Inc.*, 517 F.2d 24, 26 (1st Cir. 1975) (rejecting plaintiff corporation's use of derivative suit under rule 23 stating that plaintiff's corporation's "own interests, or at least the interests of its principal, suggest that from its standpoint the 'highest and best' use of the derivative suit would be as a weapon in the total [principal's] arsenal"). The Court finds, in light of the record and pleadings, that Kenneth, and not the entity plaintiffs, is the true party in interest in this matter.

Moreover, the Court notes that since removed allegations concerning ownership of the entity plaintiffs demonstrate that Kenneth and the entity plaintiffs are one and the same. The originally filed complaint alleged Kenneth brought the derivative claims on his own behalf. (*See* Dkt. No. 1.) In the subsequently filed first amended complaint, Kenneth was replaced with the "Kenneth Nominees," Commercial and Prestige, and alleged that (i) Kenneth was the sole shareholder of the Kenneth Nominees, and (ii) it was Kenneth who continued to bring the derivative claims via the Kenneth Nominees. (*See* Dkt. No. 13 at 3.) The second amended complaint relabeled the Kenneth Nominees as entity plaintiffs, removed the ownership allegation, and added that Kenneth is a director of the entity plaintiffs. (*See generally* Dkt. No. 40.) Thus, this *Larson* factor weighs against Kenneth and the entity plaintiffs from serving as representatives under Rule 23.1.

Although the defendants argued otherwise in their briefing and at the December 17, 2019 hearing, the Court finds that the second and third factors, "the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit" and "the degree of control exercised by the attorneys over the litigation," weigh in favor of Kenneth. Given Kenneth's role, the Court is

13

satisfied that he is intimately aware of and driving the litigation.

The fourth *Larson* factor, "the degree of support received by the plaintiff from other shareholders," weighs decidedly against Kenneth and the entity plaintiffs. "Courts may also consider a potential representative's outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit." *RePET, Inc.*, 2016 WL 11518482, at *5. Here, given Kenneth's extensive alleged entanglements in the scheme, where he sat on both boards, approved the agreement twice, and received the alleged illegal funds, shareholders' interests would likely be disregarded in the management of this suit under Kenneth and the entity plaintiffs. Thus, support from other shareholders would be minimal at best, but likely non-existent given Kenneth's participation in approving the alleged scheme.

Kenneth's citation to *Natomas Garden Investment Grp. LLC v. Sinadinos*, No. CIV. S-08-2308 FCD/KJM, 2009 WL 1363382 (E.D. Cal. May 12, 2009), for the proposition that he does not need approval from other shareholders, does not persuade. There, the plaintiffs were "the only shareholders who allegedly did not benefit from defendants' alleged unlawful conduct, [and thus were] not only uniquely situated to bring their derivative claim, but [were] also the only shareholders willing to seek relief on behalf of the allegedly harmed companies." *Id.* at 16. Here, per the allegations of the complaint, Kenneth was involved in the scheme and did, in fact, benefit from the scheme. Thus, the fourth *Larson* factor weighs against Kenneth and the entity plaintiffs.

The fifth *Larson* factor too, "lack of any personal commitment to the action on the part of the representative plaintiff," weighs against Kenneth and the entity plaintiffs. The second amended complaint and requested relief, confirm that Kenneth has personal commitment to the action, especially where he is seeking to declaratory relief that he is not liable for any part of the scheme, and reinstatement back on to the respective boards of Yeung family owned subsidiaries. *See Bass v. First Pacific Networks, Inc.*, No. C 92-20763, 1993 WL 484715, at *1 (N.D. Cal. Sept. 30, 1993) (dismissing action where shareholder sought relief "clearly designed" to favorably impact his own interests and his own suit).

Kenneth's reliance on *Baytree Capital Associates, LLC v. Quan*, No. CV 08-2822 CAS (AJWx), 2008 WL 4447647 (C.D. Cal. Sept. 29, 2008) for the proposition that mere acceptance of

14

a benefit does not prohibit him or his entities from serving as a representative under Rule 23.1 does not persuade. In *Baytree Capital*, while the entity plaintiff benefitted from the purported wrong doing, it had no involvement whatsoever in the underlying scheme. 2008 WL 4447647, at \*13-14 ("Plaintiff acknowledges that it received earn out shares, but argues that it has not participated in any of the alleged wrongdoing. . . . The fact that plaintiff received earn out shares does not make it a participant in the alleged wrongdoing; the wrongdoing alleged is the scheme that led to the issuance of the earn out shares the . . . defendants do not argue that plaintiff participated in that scheme."). Kenneth's arguments that he was not involved in the scheme are directly contradicted by the allegations in the second amended complaint that he approved the agreement underlying the purported scheme in his capacity as a director for Mt. Oscar and Yeung Holding. Thus, the fifth *Larson* factor weighs against Kenneth and the entity plaintiffs.

The sixth *Larson* factor, "the remedy sought by plaintiff in the derivative action," further weighs against Kenneth and the entity plaintiffs. Kenneth's requested relief makes clear that he seeks to hold every other director on the Mt. Oscar and Yeung Holding boards but himself to treble damages, seeks reinstatement as a director, and further seeks, in his individual claim, declaratory relief that he committed no wrongdoing in any relation whatsoever with the scheme. (Dkt. No. 40 at ¶¶ 115-121.) Although Kenneth avers that the remedy sought is narrowly tailored, such a conflict in the discrepancy between the relief requested as to himself and as to other directors demonstrates that he is an inadequate individual to maintain a shareholder derivative action under Rule 23.1. This is especially so where the clear allegations of the second amended complaint include that Kenneth sat on the board at the relevant time and twice approved the agreement underlying the purported scheme. Thus, the sixth *Larson* factor weighs against Kenneth and the entity plaintiffs.

The seventh *Larson* factor, "the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself," is against Kenneth and the entity plaintiffs. Kenneth is not free from economic interests that are antagonistic to the class, especially where he himself was involved in the purported scheme. Moreover, as noted, the allegations include Kenneth's wrongful removal from the Yeung family owned boards and the requested relief

15

includes Kenneth's reinstatement on the boards from the entities from which he was removed. Weighing Kenneth's personal interests as compared to the interest of the derivative action itself, the Court finds that Kenneth's personal interests far exceed Kenneth's interest in the derivative action itself. *See Zarowitz v. BankAmerica Corp.*, 866 F.2d 1164, 1166 (9th Cir.1989) (individual with litigation against the corporation lacked standing to sue as a representative plaintiff in a separate derivative action where his interest in increasing the value of his corporate stock through larger derivative suit recovery was dwarfed by his interest in wrongful termination and defamation actions against the corporation). Thus, the seventh *Larson* factor weighs against Kenneth and the entity plaintiffs.

Finally, the eighth *Larson* factor, "plaintiff's vindictiveness toward the defendants," weighs against Kenneth and the entity plaintiffs. "The reason [courts] consider vindictiveness as a factor in evaluating adequacy of representation is to render ineligible individuals who possess animus that would preclude the possibility of a suitable settlement." *Kayes*, 51 F.3d at 1464. In certain circumstances, the filing of multiple lawsuits can demonstrate vindictiveness and lead to disqualification of an individual as a representative under Rule 23.1. *See Hornreich v. Plant Indus., Inc.*, 535 F.2d 550, 551-52 (9th Cir. 1976) (affirming disqualification of plaintiff where plaintiff engaged in multiple pending actions against defendant corporation and threatened litigation as leverage for his other claims). *See also Aztec Oil and Gas, Inc. v. Fisher*, 152 F. Supp. 3d. 832, 858 (S.D. Tex. 2016) ("Moreover, the fact that [individuals] are Defendants in the main action and simultaneously the Plaintiffs in the subsequently filed derivative action clearly raises more than a specter that the derivative action was filed in retaliation and vindication of, and in direct conflict with, the claims that have been asserted against them in the main action, and as a weapon against or leverage in defending against that main action."). In other circumstances, the filing of multiple suits can indicate no apparent vindictiveness. *Kayes*, 51 F.3d at 1464 ("[Prior lawsuit] shows no more vindictiveness towards Defendants than does the case at bar, but rather indicates a desire to enforce the same rights.").

On balance, the Court finds that the numerous lawsuits filed in Hong Kong, China by Kenneth against the defendants suggests that this lawsuit was filed in a vindictive manner.

16

Although Kenneth avers that he is vindicating the same rights in this case that he attempted to vindicate in prior cases, this is notably the first lawsuit where Kenneth has sought the reimbursement of alleged misuse of funds to Yeung Holdings and Estates. Many of prior lawsuits concerned his removal as a director from the board of various Yeung family owned organizations and sought reinstatement to the relevant boards in many of those lawsuits. It would be a closer question as to the nature of whether this lawsuit is vindictive if all the prior lawsuits were exclusively about corporate control about Yeung Holding or Mt. Oscar. However, Kenneth has also sued defendants for defamation based on his alleged harassment that occurred during board meetings. Given the diversity of the subject of the lawsuits and the sheer number of lawsuits recently filed by Kenneth, there is a substantial concern that this lawsuit was vindictively filed.

Accordingly, in light of the above analysis, the Court finds that Kenneth and the entity plaintiffs are inadequate representatives under Rule 23.1. Thus, the Court **GRANTS** Yeung Holding's and Mt. Oscar's motions to dismiss. As the Court has dismissed the derivative claims on the basis that plaintiffs are inadequate representatives under Rule 23.1, which the derivative claims contained the RICO claims, the Court is now left without subject-matter jurisdiction. However, in light of the gravity of the allegations in the second amended complaint, the Court **GRANTS** leave to amend to allow plaintiffs an opportunity to substitute other appropriate representative individuals or entities unaffiliated or owned by Kenneth in place of Kenneth and the entity plaintiffs. To the extent that an appropriate representative plaintiff is substituted into this matter, the third amended complaint shall be filed no later than **February 21, 2020**. Failure to do so will result in a *sua sponte* dismissal without prejudice of this matter for lack of subject-matter jurisdiction effective **February 24, 2020**. Additionally, in light of the Court's holding that the derivative claims should be dismissed because plaintiff entities and Kenneth are inappropriate representative under Rule 23.1, the supplemental jurisdiction issue is now mooted. Thus, the Court **DENIES AS MOOT** the individual defendant's motion to dismiss Kenneth's individual claim 7 and to strike claims for relief seeking Kenneth's reinstatement.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Yeung Holding's and Mt. Oscar's motion to

dismiss the second amended complaint and **DENIES AS MOOT** individual defendants' motion to dismiss plaintiff Kenneth's individual claim 7 and to strike claims for relief seeking plaintiff Kenneth's reinstatement. A third amended complaint shall be filed no later than **February 21, 2020**, substituting in an appropriate representative individual or entity. Failure to do so will result in a *sua sponte* dismissal without prejudice of this matter for lack of subject-matter jurisdiction effective **February 24, 2020**.

This Order terminates Docket Numbers 42, 45, 55.

**IT IS SO ORDERED.**

Dated: January 24, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**